UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND, *Plaintiff*, v. OHIO BUILDING MAINTENANCE LEASING, INC., *Defendant*, | Civil Action No. 23-1890 (TJK) |

**MEMORANDUM OPINION**

Plaintiff, a multiemployer pension fund administered in the District of Columbia, sued Defendant, an Ohio corporation employing members of the pension fund, for failing to make certain contributions to the fund and payments to the local union, as well as for failing to provide remittance reports required by the governing collective bargaining agreements, the fund's collection policy and trust agreement, and the Employee Retirement Income Security Act of 1974. To date, Defendant has failed to answer or otherwise defend this action. Thus, Plaintiff moves for default judgment and asks the Court to award damages for Defendant's delinquent contributions plus interest, liquidated damages, attorney's fees and costs, and injunctive relief. For the following reasons, the Court will grant the motion for default judgment and award most of the relief requested.

**I.      Background**

Plaintiff Bricklayers & Trowel Trades International Pension Fund is a multiemployer employee benefit plan within the meaning of the Employee Retirement Income Security Act ("ERISA"). ECF No. 1 ("Compl.") ¶ 1 (citing 29 U.S.C. § 1002(37)). Plaintiff is administered by

1

its Board of Trustees, a designated fiduciary of the pension fund as defined under ERISA. *Id.* (citing 29 U.S.C. § 1002(21)). Defendant Ohio Building Maintenance Leasing, Inc. is a corporation located within the state of Ohio and is an "employer in an industry affecting commerce" as defined by ERISA. *Id.* ¶ 2 (citing 29 U.S.C. § 1002(5), (11), (12)).

Defendant is a party to a collective bargaining agreement with the Northern & Southern Ohio District Council of International Union of Bricklayers and Allied Craft Workers. *See generally* ECF No. 11-3 at 21–26. This agreement requires Defendant to abide by conditions of employment about wages, benefit contributions, and working conditions set forth by a local agreement negotiated by the International Union of Bricklayers and Allied Craft Workers Local Union No. 55 Ohio. *See id.* at 5, 22–24; Compl. ¶ 6. Under these two collective bargaining agreements ("the CBAs"), Defendant was bound by the pension fund's Amended and Restated Agreement and Declaration of Trust (the "trust agreement"). *See* Compl. ¶¶ 1, 6–7, 9–10; *see also* ECF No. 11-3 at 22–23, 30. These agreements also obligated Defendant to make certain payments to Plaintiff and to the local union under the trust agreement's collection policy. ECF No. 11-3 at 4. Under the CBAs and trust agreement, if Defendant fails to make such contributions, Plaintiff may seek interest of 15% per year on untimely contributions and liquidated damages of the greater between either a second award of interest or liquidated damages at a rate of 20%. *Id.* at 4, 11, 16–17, 19; *see also* Compl. ¶ 15. These agreements also give Plaintiff authority to sue on behalf of the various funds and local union, which are party to the CBAs. *See* Compl. ¶ 1; *see also* ECF No. 11-3 at 3–4, 16.

In June 2023, Plaintiff sued Defendant for delinquent contribution payments and un-submitted remittance reports in violation of the CBAs, the collection policy, and ERISA. Compl. ¶¶ 15–17, 19–21. The Complaint alleges that Defendant reported—but failed to pay—

contributions owed to the Fund and payments known as dues checkoffs owed to the local union between June 2021 and October 2022, in violation of its contractual duty. *Id.* It also alleges that Defendant failed to provide required remittance reports from November 2022 through January 2024. *Id.* ¶ 19.

Defendant did not respond to the Complaint, so Plaintiff requested an entry of default, which the Clerk of Court entered. *See* ECF Nos. 6, 7. In February 2024, Plaintiff moved for default judgment, seeking judgment for: (1) monetary damages of $23,142.40 in unpaid contributions and dues checkoffs, $3,290.98 in interest through April 20, 2023, $4,050.72 in liquidated damages, and $5,199.00 in attorney's fees and costs; and (2) an injunction requiring Defendant to submit all remittance reports owed from November 2022 through January 2024 and to comply with its obligation to pay contributions to the pension fund for hours worked by covered employees over that same period. ECF No. 11-1 at 12–15.

## II.  Legal Standard

"A court has the power to enter default judgment when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics." *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 66–67 (D.D.C. 2011) (citing *Keegal v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980)). But "[b]ecause courts strongly favor resolution of disputes on their merits," a default judgment "usually is available 'only when the adversary process has been halted because of an essentially unresponsive party.'" *Id.* at 67 (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Federal Rule of Civil Procedure 55 provides a "two-step procedure" for obtaining a default judgment. *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 102 (D.D.C. 2015). First, after a defendant "has failed to plead or otherwise defend," the plaintiff may request the Clerk of

Court enter default against that defendant. Fed. R. Civ. P. 55(a). Second, after default is entered, the plaintiff may move for a default judgment. Fed. R. Civ. P. 55(b)(2). "By providing for a two-step process, Rule 55 allows the defendant the opportunity to move the court to set aside the default before the court enters default judgment." *Int'l Painters & Allied Trades Indus. Pension Fund v. Zak Architectural Metal & Glass, LLC*, 635 F. Supp. 2d 21, 23 n.1 (D.D.C. 2009); *see also* Fed. R. Civ. P. 55(c).

An entry of default "establishes the defaulting party's liability for the well-pleaded allegations of the complaint." *Elite Terrazzo*, 763 F. Supp. 2d at 67 (collecting cases). But this "does not automatically establish liability in the amount claimed by the plaintiff." *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 12 (D.D.C. 2013). Rather, "the court is required to make an independent determination of the sum to be awarded," and it is afforded "considerable latitude" in making that determination. *Pescatore v. Palmera Pineda*, 345 F. Supp. 3d 68, 70 (D.D.C. 2018) (citations omitted). A plaintiff moving for default judgment must therefore prove to the Court the requested damages "to a reasonable certainty." *Elite Terrazzo*, 763 F. Supp. 2d at 68. In support, the plaintiff may offer "detailed affidavits or documentary evidence" on which the court may rely and is "entitled to all reasonable inferences from the evidence offered." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002). The court may conduct a hearing to determine damages, Fed. R. Civ. P. 55(b)(2), but need not do so "as long as it ensures that there is a basis for the damages specified in the default judgment." *Elite Terrazzo*, 763 F. Supp. 2d at 67 (cleaned up).

**III.    Analysis**

As explained below, the Court will grant the motion for default judgment and award most of the relief requested. First, the Court finds that it has personal jurisdiction over Defendant.

4

Second, the Court finds that Plaintiff has adequately alleged its claims for liability. Third, the Court will award monetary damages, interest, liquidated damages, and attorney's fees and costs. Fourth, the Court will order Defendant to submit the required remittance reports from November 2022 to January 2024, but will decline to order Defendant to pay contributions for hours worked by covered employees over that same period.

### A.     Personal Jurisdiction

"[A] court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." *Safex Found., Inc. v. Safeth, Ltd.*, 538 F. Supp. 3d 1, 7 (D.D.C. 2021) (cleaned up). An ERISA action may be brought "in the district where the plan is administered, where the breach took place, or where a defendant resided or may be found, and process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). "ERISA's venue provision has been interpreted to authorize nationwide service of process." *Mazzarino v. Prudential Ins. Co. of Am.*, 955 F. Supp. 2d 24, 28 (D.D.C 2013) (quotation omitted). When a statute allows for nationwide service of process, "minimum contacts with the United States suffice" for a court to exercise personal jurisdiction over a defendant. *Id.* (citing *SEC v. Bilzerian*, 378 F.3d 100, 1006 n.8 (D.C. Cir. 2004)).

The Court has personal jurisdiction over Defendant. Plaintiff sued in this District, where the fund is administered, Compl. ¶ 1; *see also* 29 U.S.C. § 1132(e)(2), and served Defendant in Ohio by leaving the summons and Complaint with Defendant's registered agent's granddaughter at the registered agent's listed address. ECF No. 5-1; Compl. ¶ 2. The Federal Rules of Civil Procedure permit service on a corporation in accordance with those rules, the rules of the state where the suit is brought, or the rules of the state where a defendant is served. *See* Fed. R. Civ. P. 4(h)(1)(A) (permitting service on corporations under Rule 4(e)(1), which in turn, permits service

in accordance with rules of the state where a defendant is served); *see also* Fed. R. Civ. P. 4(h)(1)(B) (permitting service by delivering summons and complaint to officer or agents of corporation authorized to accept service). And while neither the Federal Rules of Civil Procedure nor the District of Columbia's civil procedure rules permit service on a corporation by leaving it with someone not authorized to receive service, *see, e.g.*, *Lemma v. Hisp. Nat'l Bar Ass'n*, 318 F. Supp. 3d 21, 25–26 (D.D.C. 2018), the Ohio rules permit service to be accomplished in that way, *see* Ohio Rev. Code Ann. § 1706.09(H)(1)(a) (permitting service on corporation by "delivering a copy of the process . . . to the address of the agent in [Ohio] as contained in the records of the secretary of state."). And as a corporation residing and operating within the state of Ohio, Compl. ¶ 2, Defendant has sufficient "minimum contacts with the United States" to give rise to personal jurisdiction in this Court. *See Mazzarino*, 955 F. Supp. 2d at 28; *see also, e.g.*, *Bricklayers & Trowel Trades Int'l Pension Fund v. Kel-Tech Constr., Inc.*, 319 F. Supp. 3d 330, 339 (D.D.C. 2018).

B.     **Liability**

Next, the Court finds that Defendant is a "totally unresponsive party." *See SEUI Indus. Pension Fund v. Liberty House Nursing Home of Jersey City, Inc.*, 232 F. Supp. 3d 69, 76 (D.D.C. 2017); *see also Elite Terrazzo*, 763 F. Supp. 2d at 67–68. Defendant was served in July 2023. Since then, it has failed to respond to the Complaint, move to set aside the default entered by the Clerk, oppose Plaintiff's motion for default judgment, or otherwise defend this action in any way. *See* ECF Nos. 5, 7. Defendant is thus liable for the well-pleaded allegations in the Complaint. *Elite Terrazzo*, 763 F. Supp. 2d at 67; *see also, e.g.*, *Bricklayers & Trowel Trades Int'l Pension Fund v. KAFKA Constr., Inc.*, 273 F. Supp. 3d 177, 180 (D.D.C. 2017). Upon review of Plaintiff's

factual allegations and the relevant law, the Court finds that Plaintiff's allegations are, in fact, well-pleaded and will enter default judgment for Plaintiff as to Defendant's unpaid contributions.

"ERISA requires employers to make contributions to multiemployer plans 'in accordance with the terms and conditions of' the relevant collective bargaining agreements." *Boland v. Smith & Rogers Constr. Ltd.*, 201 F. Supp. 3d 144, 147–48 (D.D.C. 2016) (quoting 29 U.S.C. § 1145). Here, Plaintiff alleges that Defendant entered into the CBAs requiring certain payments to Plaintiff and the local union for hours worked by covered employees. Compl. ¶¶ 6–7; *see also* ECF No. 11-3 ¶¶ 7–9.[1] It also alleges that Defendant has failed to make the required contributions and checkoff dues between June 2021 and October 2022, as required by the CBAs. *See* Compl. ¶¶ 8–9, 15–16; *see also* ECF No. 11-3 ¶ 11. Finally, Plaintiff alleges that Defendant has failed to submit remittance reports or pay the contributions required since November 2022, as required by the CBAs. Compl. ¶ 10; *see also* ECF No. 11-3 ¶ 12. Thus, Plaintiff has adequately alleged that Defendant is liable under ERISA and the CBAs for unpaid contributions to Plaintiff, for dues checkoffs to the local union, and for failing to submit required remittance reports under the CBAs.

Because Defendant has failed to appear, the Court will enter default judgment for Plaintiff on these claims.

### C.   Monetary Damages

When a court enters default judgment against a defendant for failure to make contributions to pension funds that are required by collective bargaining agreements, "Section 502(g)(2) of 'ERISA provides that the court *must* award: (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; and (4) reasonable attorney's fees and costs of the action.'"

---

[1] Plaintiff alleges that it is "authorized to file suit on behalf of the . . . [local union]" to recover the unpaid dues checkoffs. *See* Compl. ¶ 1; *see also* ECF No. 11-3 at 11.

*Kel-Tech*, 319 F. Supp. 3d at 343–44 (emphasis in original) (quotation omitted); *see also* 29 U.S.C. § 1132(g)(2)(A)–(D).  The Court addresses each in turn.

  First, the Court finds that Plaintiff has, to a reasonable certainty, proven that Defendant owes $23,142.40 in unpaid contributions to Plaintiff and dues checkoffs to the union from June 2021 through October 2022.  *See Elite Terrazzo*, 763 F. Supp. 2d at 68.  To support this request, Plaintiff submitted the declaration of Lester W. Kauffman, III, Plaintiff's Executive Director.  ECF No. 11-3 at 3–8; *see also R.W. Armine*, 239 F. Supp. 2d at 30 ("[C]ourt[s] may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment.").  Kauffman attached to his declaration a spreadsheet detailing the calculation of unpaid sums owed to the fund and local union based on hours reported by Defendant for the months of June 2021 through October 2022 and the requisite contribution rate in the CBAs.  ECF No. 11-3 at 6–7, 44.  The Court, after reviewing the relevant CBAs and spreadsheet, finds that this evidence provides a reasonably certain calculation of the unpaid contributions owed to Plaintiff.  *See* ECF No. 11-3 at 10–44 (relevant CBAs defining duties of Defendant vis-à-vis contributions to Plaintiff and dues to the local union and spreadsheet detailing calculations for months of work reported and contributions unpaid).  As a result, the sum of the certain unpaid monies is $23,142.40, which the Court will award in monetary damages.

  Second, the Court finds that Plaintiff has adequately proven the interest that has accrued on Defendant's unpaid contributions owed to it.  *See* 29 U.S.C. § 1132(g)(2)(B).  ERISA provides "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under [26 U.S.C. § 6621]." 29 U.S.C. § 1132(g).  Plaintiff's collection policy, which, as the Court has noted, binds Defendant, calculates interest at a rate of 15% per year from the date the payment is due to the date paid.  *See* ECF No. 11-3 at 11, 16–17, 19.  Kauffman's

declaration also details the interest owed on those unpaid contributions, ECF No. 11-3 at 7, and the attached spreadsheet calculates the interest owed on each unpaid contribution from the date due through to April 30, 2023, *see id.* at 44.  The total interest, Plaintiff calculates, is $3,290.98.  *Id.*; *see also* ECF No. 11-3 at 7.  The Court finds this amount to be reasonably certain and will award Plaintiff interest of $3,290.98.[2]

Third, Plaintiff has adequately supported its request for liquidated damages on the unpaid contributions owed to it.  ERISA entitles Plaintiff to a liquidated damages award of "an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount" of unpaid contributions determined by the Court.  29 U.S.C. § 1132(g)(2)(C).  Moreover, the CBAs provide "the employer may be assessed . . . Liquidated Damages at 20% of the delinquent contributions."  ECF No. 11-3 at 11; *see also id.* at 16–17 (providing that the trustees may "impose and receive from [a delinquent employer] the higher of an additional computation of interest . . . or liquidated damages (at the rate of twenty (20%) percent of the delinquent contributions.[)]"); *id.* at 19 ("the Trustees are authorized and empowered to impose and receive from such Employer interest . . . and/or liquidated damages, calculated at the rate of 20% of the contributions paid late.").  Twenty percent of the total unpaid contributions, totaling $20,253.60, is $4,050.72, which would be greater than a second award of interest.  Thus, the Court will award Plaintiff $4,050.72 in liquidated damages.

---

[2] This award of interest, as with the award of liquidated damages, is based solely on the $20,253.60 in contributions owed to Plaintiff and excludes the $2,888.80 in unpaid dues checkoffs owed to the local union.  *See* ECF No. 11-3 at 44 (breaking down unpaid monies between payment to various pension funds and dues checkoffs to local union).  ERISA and the CBAs provide for interest and liquidated damages on the former, but not the latter.  *See* 29 U.S.C. § 1132(g)(2)(B)–(C); *see also* ECF No. 11-3 at 11, 16–17, 19.

Fourth, the Court finds Plaintiff's request for attorney's fees and costs are both supported and reasonable. ERISA provides, in cases like this one, the Court must award "reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). Plaintiff requests $5,199.00 in attorney's fees, and costs (inclusive of filing fees and costs for service of process). *See* ECF No. 11-1 at 14. In support of this request, Plaintiff submits a declaration from Charles W. Gilligan, counsel of record for Plaintiff. *See* ECF No. 11-3 at 45–46. Attached to his declaration are documents that support his asserted costs for service of process, filing fees, and amounts billed to Plaintiff for his and his associate's services. *See id.* at 48–53. Plaintiff's request of $4,522.00 for 13.3 hours of work at a rate of $340 an hour is reasonable. *See id.* at 45–46 (detailing total request, number of hours worked, and rate charged by attorney); *see also id.* at 48 (providing attorney billing details); *see also, e.g.*, *Smith & Rogers*, 201 F. Supp. 3d at 149 (finding attorney's fees reasonable based on hourly rates as high as $615 for plaintiff's attorney); *SEUI Nat'l Indus. Pension Fund v. Metro Man I, Inc.*, 22-cv-748 (TJK), 2023 WL 4623566, at *5 (finding hourly rates of $300 for senior attorneys and $200 for junior attorneys reasonable). The request for $677 in costs based on the filing fee and cost of service of process is also reasonable. ECF No. 11-3 at 46. Thus, the Court will award attorney's fees and costs of $5,199.00.

In sum, the Court will award Plaintiff the following monetary damages: (1) $23,142.40 in unpaid contributions to Plaintiff and dues checkoffs to the local union; (2) $3,290.98 in interest; (3) $4,050.72 in liquidated damages; and (4) $5,199.00 in attorney's fees and costs.

### D. Injunctive Relief

Plaintiff also asks for an injunction requiring Defendant to (1) submit all outstanding remittance reports between November 2022 through January 2024; and (2) comply with its

obligation to pay contributions to the pension fund for hours worked by covered employees over that same period.  ECF No. 11-1 at 14–20.  The Court will enter an injunction granting the first request but not the second.

"[A] party seeking a permanent injunction must show the following: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *SEIU Nat'l Indus. Pension Fund v. Hebrew Homes Health Network, Inc.*, 17-cv-1215 (TNM), 2019 WL 4346325, at *19 (D.D.C. Sept. 12, 2019) (quoting *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 694 (D.C. Cir. 2015)).

Plaintiff is entitled to their first request, for an injunction requiring Defendant to submit all outstanding remittance reports to Plaintiff from November 2022 through January 2024.  Trustees of benefit plans have "the right to review the records of employers contributing to such plans" under ERISA.  *Int'l Painters & Allied Trades Indus. Pension Fund v. Exec. Painting, Inc.*, 719 F. Supp. 2d 45, 53 (D.D.C. 2010).  ERISA authorizes courts to grant "such other legal or equitable relief as the court deems appropriate."  29 U.S.C. § 1132(g)(2)(E).  In addition, the collection policy here required Defendant to submit remittance reports—detailing covered hours worked or owed, contributions owed, and contributions paid—on the 15th of the month following the month in which the hours were worked.  Compl. ¶ 7; *see also* ECF No. 11-1 at 9; ECF No. 11-3 at 10.  Courts regularly find injunctive relief appropriate when, in circumstances like these, "the defendant has demonstrated no willingness to comply with either its contractual or statutory obligations or to participate in the judicial process." *Hebrew Homes*, 2019 WL 4346325, at *19; *see, e.g.*, *Exec. Painting*, 719 F. Supp. 2d at 53 ("Because the defendant has not complied with the

CBAs or ERISA and has remained unresponsive throughout the judicial process, the court grants the plaintiffs' request for injunctive relief" and orders the defendant to "complete and file all outstanding remittance reports."); *Fanning v. AMF Mech. Corp.*, 326 F.R.D. 11, 16 (D.D.C. 2018) (similar).  Because Defendant has failed to provide remittance reports for November 2022 through January 2024 and has otherwise been unresponsive throughout this case, the Court finds it appropriate to require Defendant to submit those outstanding remittance reports, which are necessary for Plaintiff to ensure accurate contributions are paid.  *See* Compl. ¶ 19; *see also* ECF No. 11-3 at 7–8.

For Plaintiff's second request—an injunction ordering Defendant to comply with its obligations to make payments to Plaintiff over this same period—it has failed to establish an irreparable injury.  *See* Compl. ¶¶ 20–21; *see also* ECF No. 11-1 at 14–20.  When a "monetary judgment might serve to alter the defendant's conduct as effectively as a permanent injunction would," an injunction may be "unnecessary."  *Kel-Tech*, 319 F. Supp. 3d at 346.  Thus, substantial but recoverable economic loss "alone will rarely constitute irreparable harm . . . because economic injuries are generally reparable with monetary damages in the ordinary course of litigation."  *Hebrew Homes*, 2019 WL 4346325, at *19 (citations and internal quotation marks omitted); *id.* at *20 ("[T]his reasoning is especially applicable [where] the claims at issue arise under a statutory framework that provides for penalties and attorney's fees" and "protects funds from 'the high cost of litigation and collective expenses.'" (quoting *Serv. Employees Int'l Union Nat'l Indus. Pension Fund v. Bristol Manor Healthcare Ctr., Inc.*, 12-cv-1904 (RC), 2016 WL 3636970, at *2)).  To establish irreparable injury to support an injunction, a plaintiff must instead go beyond economic loss to show, for example, that such loss "threaten[s] the . . . very existence" of their business.  *Kel-Tech*, 319 F. Supp. 3d at 346 (citations omitted) (suggesting also risk of compromising "the

actuarial soundness of the fund" or a defendant's "'precarious financial condition' [that] le[aves] the plan unlikely to recover its losses" could support an injunction for timely contributions).

Plaintiff is not entitled to their second request because it has not shown it will suffer irreparable injury or that monetary damages for violations would be inadequate. *See Hebrew Homes*, 2019 WL 4346325, at *19; *see also Morgan Drexen, Inc.*, 785 F.3d at 694 ("Failing to satisfy any factor [required for a permanent injunction] is grounds for denying relief."). Plaintiff does not claim—nor does the record reflect—that it will suffer any loss exceeding what the Court may redress through future awards of monetary damages. For example, it does not claim that any unpaid contributions by Defendant "threaten the . . . very existence" of the fund. *See Kel-Tech*, 319 F. Supp. 3d at 346.

To the extent this request for injunctive relief is a request for monetary damages Plaintiff would be owed based on the hours Defendant reports over this period, the Court is similarly unable to provide that relief. The Court must have a record sufficient to calculate damages under ERISA "to a reasonable certainty." *Elite Terrazzo*, 763 F. Supp. 2d at 68. Plaintiff has provided no basis for the Court to calculate damages under ERISA for that period. Indeed, Plaintiff acknowledges that it cannot accurately calculate the damages it seeks. *See* ECF No. 11-1 at 20 ("Once the Defendant complies with the Court's Default Judgment, the Plaintiff will have the remittance reports and corresponding contributions – *if any are owed* – for the months outlined herein") (emphasis added); *see also* ECF No. 11-3 at 8 ("Because [Defendant] failed to submit reports for these months, the Plaintiff cannot calculate the contributions and attendant amounts owed for work performed during that period."). The Court cannot grant such a request, given the inherent uncertainty about what amounts, if any, Plaintiff is owed. *See Kel-Tech*, 319 F. Supp. 3d at 344

13

(Where plaintiff failed to provide calculations of damages owed "they ha[d] failed to show . . . damages due 'to a reasonable certainty.'").

Therefore, the Court will grant an injunction requiring Defendant to submit to Plaintiff all outstanding remittance reports for November 2022 through January 2024, but it will deny the request for an injunction requiring Defendant to pay any contributions owed for those months.

## IV.  Conclusion

For all the above reasons, the Court will grant Plaintiff's motion for default judgment and award monetary damages and issue an injunction requiring Defendant to provide Plaintiff remittance reports for all months between November 2022 through January 2024. The Court will deny the motion to the extent it seeks an injunction requiring payments or an award of damages under ERISA for that same period. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 11, 2024